COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Annunziata and
          Senior Judge Hodges
Argued at Richmond, Virginia


CHARLES RICHARD RILEY,
 a/k/a MIKE COOK,
 a/k/a AUBREY RAY THROCKMORTON                OPINION BY
                                    JUDGE ROSEMARIE P. ANNUNZIATA
v.        Record No. 1490-94-2           DECEMBER 12, 1995

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    James E. Kulp, Judge

        Robert P. Geary for appellant.

        Eugene Murphy, Assistant Attorney General
        (James S. Gilmore, III, Attorney General, on
        brief), for appellee.


     Following a jury trial, the appellant, Charles Richard
Riley, was convicted of abduction, five counts of rape, and two
counts of sodomy.  On appeal, he contends that the trial court
erred in the following: (1) sustaining the Commonwealth's
peremptory challenges even though based on the gender of the
stricken jurors; (2) ruling that the Commonwealth's peremptory
challenges based on age were proper; and (3) bifurcating the
trial and sentencing proceedings pursuant to Code § 19.2-295.1.
We find that the Commonwealth's peremptory strikes were gender-
based and, therefore, improper.  Accordingly, we reverse the
convictions of the trial court and remand the case for a new
trial.  We affirm the trial court on the remaining issues
presented.

     On March 25, 1993, the victim went for an early morning jog.

During her run, the appellant approached the victim, placed her in a headlock, and held a knife to her throat.  The appellant led the victim into the woods where he restrained her with a rope and repeatedly raped and sodomized her.  The appellant then led the victim from the woods and released her.

At trial, the Commonwealth used its peremptory strikes to remove five prospective jurors.  The five jurors were females ranging in age from fifty-eight to sixty-six years old.  The appellant objected on the ground that the peremptory strikes violated the Equal Protection Clause because the strikes were based on gender and age-related reasons.  The trial court overruled the objection.

I

A defendant has the "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." Batson v. Kentucky, 476 U.S. 79, 85-86 (1986).  In Batson, the United States Supreme Court held that the peremptory exclusion of jurors "on account of their race" violates the Equal Protection Clause.  Id. at 89.  In J.E.B. v. Alabama ex rel. T.B., 114 S. Ct. 1419 (1994), the Court extended this protection and held that "gender, like race, is an unconstitutional proxy for juror competence and impartiality."  Id. at 1421.

The Batson Court established a three-step test to determine the validity of allegedly discriminatory peremptory challenges. The opponent of a peremptory challenge must establish a prima facie case of discrimination (step 1); once a prima facie case is

2

made, the burden of production shifts to the proponent of the strike to produce a race-neutral or, as in this case, a gender-neutral explanation (step 2); if a neutral explanation is proffered, the trial court must then decide whether the opponent of the strike has met its burden and proved purposeful discrimination (step 3). Purkett v. Elem, 115 S. Ct. 1769, 1770-71 (1995); see also Buck v. Commonwealth, 247 Va. 449, 450-51, 443 S.E.2d 414, 415 (1994); Carter v. Commonwealth, 16 Va. App. 118, 123, 428 S.E.2d 34, 37 (1993). The Supreme Court has emphasized the requirement that a court carry out each step independently. Terminating the inquiry prematurely, at step two, "violates the principle that the ultimate burden of persuasion regarding [unlawful discriminatory] motivation rests with, and never shifts from, the opponent of the strike." Purkett, 115 S. Ct. at 1771.[1]

In this case, the appellant contends that the Commonwealth exercised its peremptory strikes for age and gender reasons. The

[1] The record reflects that, after the trial court determined that the Commonwealth's explanation was neutral, the appellant attempted to meet his burden of proving purposeful discrimination as mandated by Batson. See Carter, 16 Va. App. at 124, 428 S.E.2d at 39-40. The appellant argued that the Commonwealth's explanation was pretextual, contending that if the Commonwealth had wanted to strike persons most unlike the victim, it would have stricken men. The trial court did not specifically rule on the appellant's contention. Even if this Court found that the Commonwealth met its step two burden by providing a neutral, age-based, explanation for its strikes, the trial court failed to determine whether the allegedly neutral reasons given were pretextual. See id. Ending the inquiry without making such a determination is error, requiring remand. United States v. Joe, 928 F.2d 99, 103 (4th Cir.), cert. denied, 502 U.S. 816 (1991).

propriety of the appellant's prima facie case is not at issue. The trial judge expressed some doubt about the existence of a prima facie showing but assumed, for the purpose of the record, that the appellant met his initial burden.  Moreover, the Commonwealth proceeded in its attempt to offer neutral reasons for the challenges.  When the proponent proceeds to step two before the court makes a step one determination, the trial court need not consider whether the opponent established a prima facie showing of discrimination.  See Buck, 247 Va. at 451, 443 S.E.2d at 415 (citing Hernandez v. New York, 500 U.S. 352, 359 (1991) (plurality opinion)).

In attempting to provide a neutral explanation, the Commonwealth defended the constitutionality of its selections as follows:

> What I have done, by removing the people I struck, I have removed women who are most unlike the victim, in terms of age.  I have left on those who share the victim's characteristics as much as I can, in terms of their sex and their age.  There is not a discriminatory basis.  This is a basis based on the facts that I have a rape victim who is, (A) She's a working female.  I don't know what attitude other individuals who are older may take; and (B) I have a young lady who is out jogging, and I don't know what attitude older females may take, but I do know they're most unlike the victim, as far as I can determine from the scant evidence we have, their age and their lifestyle.  I would point out to the Court that I have in the past, my experience, based on trying cases, and I am a veteran of seventeen years of trying cases, from Henrico County Circuit Court, is that in rape cases, feedback I have gotten from the jury afterwards, is that many times the elderly female jurors have difficulty accepting certain aspects of the cases, and they have a difficult time considering the

4

evidence and reaching a verdict of guilt.

A trial court's determination that the Commonwealth's explanation was gender-neutral is a finding on a matter of law and fully reversible by this Court. See Purkett, 115 S. Ct. at 1771 (step two explanation must be legally sufficient to justify judgment for defendant); Hernandez, 500 U.S. at 360 (step two explanation is invalid if discriminatory intent is inherent in the explanation). Unlike a trial court's determination that the explanation is pretextual, a determination turning largely on the proponent's credibility, e.g. Hernandez, 500 U.S. at 365, a trial court's finding of "facial neutrality" is not given deference on appeal.

The trial court determined that the Commonwealth's explanation was facially neutral, limiting its inquiry to the factor of age alone. The court correctly concluded that age is a permissible basis upon which to exercise a peremptory strike. See Barksdale v. Commonwealth, 17 Va. App. 456, 461, 438 S.E.2d 761, 764 (1993); Chambliss v. Commonwealth, 9 Va. App. 267, 269-70, 386 S.E.2d 478, 479 (1989). However, the court failed to address defense counsel's contention that the Commonwealth's strikes were gender-based.

To survive challenge at step two, the strike must be based on a juror characteristic other than gender. J.E.B., 114 S. Ct. at 1430. Here, however, the prosecutor's explanation clearly references his intention to strike only women--albeit older women--from the jury panel. The fact that the Commonwealth used

5

age to identify which women to strike does not overcome the constitutional infirmity.  The Commonwealth exercised its strikes based on the assumption that the women would hold particular views because of their gender.  Such attempts to stereotype in the jury selection process are impermissible.  Lying "at the very heart of the jury system" is the factual assumption that "jury competence is an individual rather than a group or class matter."  J.E.B., 114 S. Ct. at 1430 n.19.

The Commonwealth's explanation bears a striking resemblance to the justification offered by the State of Alabama in J.E.B. when it used nine of its ten peremptory challenges to strike men.  The State maintained that its decision to strike virtually all males from the jury

> may reasonably have been based upon the perception, supported by history, that men otherwise totally qualified to serve upon a jury might be more sympathetic and receptive to the arguments of a man alleged in a paternity action to be the father of an out-of-wedlock child, while women equally qualified to serve upon a jury might be more sympathetic and receptive to the arguments of the complaining witness who bore the child.

J.E.B., 114 S. Ct. at 1426.

The J.E.B. Court rejected the defense to gender-based peremptory challenges as "'the very stereotype the law condemns.'"  Id.  Such discrimination "serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women."  Id. at 1422.  "[G]ender classifications that rest on impermissible stereotypes violate the Equal Protection Clause, even when some statistical

6

support can be conjured up for the generalization."  Id. at 1427 n.11.

The explanations offered by the Commonwealth evidence a clear violation of J.E.B. and require this Court to reverse and remand this case to the trial court for further proceedings consistent with this opinion.

II

The appellant argues that under Code § 1-16,[2] the unitary trial and sentencing procedures in force at the time of his crimes should have been followed at his second trial rather than the bifurcated proceedings mandated by Code § 19.2-295.1.  This crime occurred on March 25, 1993.  The appellant was first convicted on November 16 and 17, 1993.  Those convictions were overturned and a new trial was ordered due to juror misconduct. Code § 19.2-295.1[3] took effect after the first trial and before

---

[2] Code § 1-16 provides, in pertinent part:

> No new law shall be construed to repeal a former law, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture, or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture, or punishment so incurred, or any right accrued, or claim arising before the new law takes effect; save only that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings.

[3] Code § 19.2-295.1 provides, in pertinent part:

> In cases of trial by jury, upon a finding that the defendant is guilty of a felony, a separate proceeding limited to the

7

the second.

In construing Code § 1-16, the Virginia Supreme Court has held that the "procedural provisions of the statute in effect on the date of trial control the conduct of trial insofar as practicable." Smith v. Commonwealth, 219 Va. 455, 476, 248 S.E.2d 135, 148 (1978), cert. denied, 441 U.S. 967 (1979).

Code § 19.2-295.1 does not convey a substantive right. Cf. Jamborsky v. Baskins, 247 Va. 506, 511, 442 S.E.2d 636, 638-39 (1994) (twenty-one day transfer period for juveniles held not to confer substantive right and is therefore procedural). Procedural in nature, Code § 19.2-295.1 properly governed the second trial and permitted bifurcating the trial and sentencing proceedings. Accordingly, the trial court did not err in bifurcating the sentencing proceedings in the appellant's second trial.

For the foregoing reasons, we reverse the convictions on the basis of gender discrimination during juror selection and remand the case for a new trial if the Commonwealth be so advised. On the remaining questions presented, we affirm the trial court's rulings and judgment.

_____

> ascertainment of punishment shall be held as soon as practicable before the same jury. At such proceeding, the Commonwealth shall present the defendant's prior criminal convictions by certified, attested or exemplified copies of the record of conviction, including adult convictions and juvenile convictions and adjudications of delinquency. . . .

8

<u>Affirmed in part</u>,
<u>reversed in part</u>,
<u>and remanded</u>.